IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CRYPTON FUTURE MEDIA, INC.,

    Plaintiff;

v.

HOLOGRAM USA, INC., et al.,

    Defendants.

Civil Action No. 14-1247-RGA

MEMORANDUM OPINION

John W. Shaw, Esq. (argued), Shaw Keller LLP, Wilmington, DE; Marc R. Labgold, Esq., Patrick J. Hoeffner, Esq., Law Offices of Marc R. Labgold, P.C., Reston, VA, attorneys for Plaintiff Crypton Future Media, Inc.

Patricia R. Urban, Esq., Elizabeth Wilburn Joyce, Esq., Pinckney, Weidinger, Urban & Joyce LLC, Wilmington, DE; Ryan Geoffrey Baker, Esq., Scott M. Malzahn, Esq. (argued), Baker Marquart LLP, Los Angeles, CA, attorneys for Defendants Hologram USA, Inc. and Musion Das Hologram Limited, n/k/a MDH Hologram Limited.

September 8, 2015

**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court are Defendants' (collectively, "Hologram") motions to dismiss for lack of subject matter jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. (D.I. 10, 30). The matter has been fully briefed. (D.I. 11, 16, 19, 31, 33, 34). The Court heard oral argument on March 10, 2015. (D.I. 23 [hereinafter, "Tr."]). For the reasons set forth below, Hologram's motions are **GRANTED** with respect to subject matter jurisdiction.

## BACKGROUND

On September 29, 2014, Plaintiff Crypton Future Media, Inc. filed this declaratory judgment action seeking a declaratory judgment of non-infringement of U.S. Patent Nos. 5,865,519 ("the '519 patent") and 7,883,212 ("the '212 patent"). (D.I. 1). Crypton is a software company that owns the rights to *Hatsune Miku*, a fictional character, and related software that allows users to create songs in *Hatsune Miku*'s voice. (D.I. 16 at p. 1). Crypton uses rear-projection technology to create a projection of *Hatsune Miku* that performs in concerts. (*Id.* at pp. 2-3).

On September 25, 2014, Hologram sent a cease-and-desist letter to Crypton and two studios with upcoming performances featuring *Hatsune Miku* demanding that Crypton cancel its performances and institute a litigation hold. (*Id.* at p. 6). Hologram demanded written assurances within one business day that the performances would be cancelled, or a description of the "allegedly non-infringing technology." (D.I. 13 at p. 20). At the time it sent the letter, Hologram did not know how Crypton's system worked. (Tr. 21). Hologram ultimately allowed the performances to go forward with certain conditions, including that Hologram be allowed to inspect the technology used at the performances. (*Id.* at p. 7). Hologram determined that the technology it inspected was non-infringing. (*Id.* at pp. 8-9).

2

At the Court's request, Crypton filed an amended complaint which provided more detail about the technology at issue. (D.I. 25). Crypton explained, "The term 'rear-projection' technology means light from the projection source(s) impinges upon the rear surface (*e.g.*, viewing screen) and not the 'front surface' . . ." (*Id.* at 7). Crypton's counsel represented that, although the rear-projection aspect of the system remains the same from performance to performance, the various elements used (for example, the screens and projectors) are rented on-site. (Tr. at 14). Thus, the type of projector and screen material may change from performance to performance based on what is available at the time. (*Id.* at 24). In addition, the layout of the system is tailored to the location of the performance. (*Id.*).

Crypton's amended complaint added counts for declaratory judgment of invalidity and two state law tort claims. (D.I. 25 at 10-12). After Crypton filed its amended complaint, Hologram filed a second motion to dismiss and related briefing to respond to Crypton's additional allegations. (D.I. 30, 31, 33, 34). I will address the motions together.

## LEGAL STANDARD

The Declaratory Judgment Act provides, "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). For a declaratory judgment action to be a live case or controversy, the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests; and . . . be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks and alterations omitted). The Supreme Court summarized:

3

"Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

An actual case or controversy must exist at the time the case is filed and continue through all stages of review. *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974).

> The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since. If a party has actually been charged with infringement of the patent, there is, necessarily, a case or controversy adequate to support jurisdiction at that time. Further, once that burden has been met, absent further information, that jurisdiction continues. The burden of bringing forth such further information may logically rest with the party challenging jurisdiction, but the actual burden of proof remains with the party seeking to invoke jurisdiction.

*Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344-45 (Fed. Cir. 2007) (internal quotation marks and citations omitted) (emphasis omitted).

"[A] patentee defending against an action for a declaratory judgment . . . can divest the trial court of jurisdiction over the case by filing a covenant not to assert the patent at issue against the putative infringer . . . ." *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995). Binding written assurances unequivocally disclaiming any intent to sue can also moot a controversy. *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1358 (Fed. Cir. 2013), *cert. denied*, 134 S. Ct. 901 (2014).

## ANALYSIS

Hologram argues that its September 25, 2014 letter did not create a substantial controversy. (D.I. 11 at p. 9). Even if it had, Hologram further argues that the controversy has been mooted because Hologram has given Crypton "repeated assurances that it considers the technology at issue in the Complaint to be non-infringing." (*Id.* at p. 3). Hologram argues that any future harm is therefore speculative. (D.I. 31 at p. 9).

4

Hologram has made the representations that "Crypton may continue to use the 'rear projection technology' that was used at the Appearances in the United States and that such rear projection technology is non-infringing of any patent currently held by any Defendants." (D.I. 35 at Ex. 1). Hologram further represented that it considers "rear-projection technology" to mean

> light from a projection source is projected directly onto the rear surface of a projection screen where the light produces an image on the projection screen for viewing by an audience, wherein said rear surface of the projection screen faces toward the projection source, in contrast to the front surface that faces directly toward the audience, the rear-projected image being visible to the audience through the screen.[1]

(D.I. 38 at p. 2 n.2). Hologram USA made an additional representation:

> Our understanding is that the way Crypton has operated in the past is that there was a rear projector that was facing towards the audience, that created an image on a semi-transparent screen. Whether it's a DILAD or Clarex screen. I'm prepared and authorized now to represent on behalf of Hologram USA . . . that does not infringe.

I rely on these representations in reaching my decision. Thus, they are binding as a matter of judicial estoppel. *Monsanto*, 718 F.3d at 1358.

Hologram argues that this case is analogous to *Monsanto*. In that case, the Federal Circuit found that a covenant not to sue was not necessarily required to divest a court of declaratory judgment jurisdiction. *Id.* The court relied on Monsanto's unequivocal representations disclaiming any intent to sue growers and seed sellers for inadvertently using or selling trace amounts of genetically modified seeds. *Id.* Because the court relied on Monsanto's representations in reaching its decision, they were binding as a matter of judicial estoppel. *Id.* The court held that Monsanto was not required to disclaim an intent to sue a grower who inadvertently uses or sells greater than a trace amount of genetically modified seed because there

---

[1] The parties do not agree on this definition of "rear-projection technology," and I do not hold that Defendants' definition is correct. I include it here to clarify that Defendants are estopped from arguing that any technology fitting its definition infringes its patents.

5

was no allegation that the plaintiffs did so. *Id.* at 1359. Hologram argues that, like Monsanto, it is not required to disclaim an intent to sue for future activity that is not described in the complaint. (D.I. 31 at p. 9).

Crypton argues that Hologram's statements are not sufficient to moot the controversy created by Hologram's cease-and-desist letter. (D.I. 33 at pp. 3-4). Crypton argues that Hologram has "done everything except unequivocally disclaim any intent to sue Crypton for use of its rear projection system in the future." (*Id.* at p. 4). Crypton maintains that *Monsanto* is distinguishable because Hologram's representations are not as clear as the unequivocal commitments made in *Monsanto*. (D.I. 16 at p. 16).

At the time the action was filed, there was clearly declaratory judgment jurisdiction. Hologram maintains that its letter merely "expressed concern" about potential infringement. (D.I. 11 at p. 9). I disagree. The letter itself acknowledges the threatening tone. (D.I. 13 at p. 20 ("In spite of the tone of this letter, Hologram USA is willing to explore the possibility of a mutually beneficial business relationship.")). In addition, when "a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support [declaratory judgment] jurisdiction." *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009) (emphasis and alteration in original). The letter was entitled "Notice of Infringement of U.S. Patent Nos. 5,865,519 and 7,883,212" and clearly charged Crypton with infringement. (D.I. 13 at p. 19).

Hologram's conduct placed Crypton in

> the sad and saddening scenario that led to enactment of the Declaratory Judgment Act. In the patent version of that scenario, a patent owner engages in a *danse macabre*, brandishing a Damoclean threat with a sheathed sword. Guerrilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity. Before the Act, competitors victimized by that tactic were rendered helpless

6

> and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests.

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734-35 (Fed. Cir. 1988) (citations omitted), *overruled on other grounds by MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. at 127.

Hologram's actions are precisely the "extra-judicial patent enforcement with scare-the-customer-and-run tactics" the Federal Circuit described. (*Id.* at 735). Despite having no basis to believe Crypton was infringing its patents, Hologram sent cease-and-desist letters not just to Crypton, but also to the venues. I find it incredible that Hologram now maintains that "there never was a controversy of sufficient immediacy to warrant judicial review." (D.I. 11 at p. 9).

Turning to whether subsequent action has divested the court of jurisdiction, I find that it has. I agree with Crypton that Hologram has been careful to make narrow disclaimers that leave a wide range of future activity susceptible to attack. Because Crypton's system uses a different layout each time based on site-specific concerns, and uses various materials rented on site, Hologram's statements may not address all future activity. It is for precisely that reason, however, that the Court cannot retain jurisdiction. Because the technology is different each time, this action cannot result in "specific relief through a decree of a conclusive character." *MedImmune*, 549 U.S. at 127. "The residual possibility of a future infringement suit based on . . . future acts is simply too speculative a basis for jurisdiction . . . ." *Super Sack*, 57 F.3d at 1060 (finding that a promise not to sue with respect to past and present products was sufficient notwithstanding patentee's failure to include future products in its disclaimer). Hologram's

7

representations are sufficient to moot the controversy and are binding as a matter of judicial estoppel.

Because I find that there is no jurisdiction for declaratory judgment of non-infringement, counts three through six must also be dismissed. Once a patentee has eliminated the controversy with respect to non-infringement with a promise not to sue, jurisdiction for a declaratory judgment of invalidity is also mooted. *Id.* Jurisdiction for the state law claims was based on supplemental jurisdiction. (D.I. 25 at 2). Because I am dismissing the federal claims, I find it appropriate to dismiss the related state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [state law] claim [if] . . . the district court has dismissed all claims over which it has original jurisdiction."). Because I am dismissing all counts for lack of subject matter jurisdiction, I will not address the portions of Hologram's motions with respect to Rule 12(b)(3) (D.I. 10) or Rule 12(b)(6) (D.I. 30).

## CONCLUSION

For the reasons set forth above, Hologram's motions to dismiss (D.I. 10, 30) are **GRANTED** with respect to subject matter jurisdiction. The remainder of the motions are **DISMISSED AS MOOT**. An appropriate order will be entered.

8